

FILED
FEB 16 2010
CLERK

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| BIRD HOTEL CORPORATION, and all others similarly situated, | \* \* \* | CIV 06-4073 |
| Plaintiff, | \* \* \* | MEMORANDUM OPINION AND ORDER |
| -vs- | \* \* | |
| SUPER 8 MOTELS, INC., | \* \* | |
| Defendant. | \* \* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Plaintiff Bird Hotel Corporation ("Bird Hotel") has brought a class action lawsuit against Super 8 Motels, Inc. ("Super 8") for breach of the franchise agreement entered into between the parties. Currently pending before the Court are motions for summary judgment filed by both parties in this case. The motions have been fully briefed and a motion hearing was held before the Court on Thursday, February 4, 2010. For the reasons set forth below, Bird Hotel's Motion for Summary Judgment will be granted in part and denied in part and Super 8's Motion for Summary Judgment will be denied.

### BACKGROUND AND RELATED FACTS

Franchise Agreement and VIP Program

In approximately 1984, Super 8 began offering the standard Super 8 Motels Franchise Agreement ("Agreement") at issue in this class action to its franchisees in the United States and Canada. Super 8 continued to offer this standard agreement to its franchisees until at least 1991. The agreements were for a fixed duration of 20 years.

On February 5, 1986, Bird Hotel and Super 8 entered into this Agreement for the operation of a Super 8 Motel franchise in Winnipeg, Manitoba in Canada. All of the class members entered into the same 20-year standard agreement between the years of 1984 to 1991. The agreement was drafted by Super 8 and presented to all prospective franchisees on the same terms.

The Agreement entered into by the parties provided franchisees with the right to use, among other things, the Super 8 name and marks, methods of operation, national advertising service, and Superline reservation system if Bird Hotel paid fees and abided by the covenants delineated in the Agreement. One covenant entitled "Standards of Operation" requires franchisees :

> (A) To maintain a high moral and ethical standard and atmosphere at FRANCHISEE'S motel; to comply with all local, state and federal laws, ordinances, rules and regulations relating to said premises or to any restaurant, cocktail lounge or other improvements thereon; to maintain its premises and accommodations in a clean, attractive, safe and orderly manner, and to provide efficient, courteous and high quality service to the public, to abide by the rules of operation, however denominated, as are from time to time adopted by FRANCHISOR, and to furnish motel accommodations, services and conveniences of the same high quality and distinguishing characteristics as provided at Super 8 Motels in and around the United States and elsewhere so that the motel operated by FRANCHISEE hereunder shall help to create and maintain goodwill among the public for the System as a whole and so that FRANCHISOR, FRANCHISEE, and each member of said System shall be benefited and the public assured of uniform, efficient, courteous, and high quality service on a standardized national basis within the System. FRANCHISEE agrees to operate its motel at all times in strict compliance with the System, amendments thereto adopted by FRANCHISOR and the provisions set forth herein. It is the intent of the parties hereto that regardless of who occupies the motel either as owner, lessee, or otherwise, the same shall be operated under the terms of the Agreement; FRANCHISEE acknowledges that the System as operated by FRANCHISOR and its franchisees represents itself to the public as a budget and/or economy motel chain with room rates generally below the going rate in that community and FRANCHISEE agrees to operate motels subject to this Franchise Agreement in such a manner as to not damage such reputation;

The "System" that is referenced in the Agreement includes, but is not limited to, the following distinguishing characteristics:

> (1) . . . "Word Marks," either along or in combination or association with the

|     | color scheme or pattern, building design, insignia, slogans, signs, emblems, trade names, trademarks, service marks, certification marks, or with the motel service . . .; |
| --- | --- |
| (2) | A distinctive and readily recognizable design and construction . . .; |
| (3) | The appearance, color scheme, pattern and design, and the color combinations of the exteriors and of the interiors of said structures, and on certain of the furnishings therein; |
| (4) | The Word Marks, trademarks, trade names, service marks, certification marks, insignia, emblems, signs, designs, color, and patterns, and any other distinctive features as now or hereafter in use at Super 8 Motels . . .; |
| (5) | Style, color and other distinguishing characteristics of equipment, furnishings and appliances used in and about the motels, and the equipment and supplies bearing any of the Word Marks, and any other distinguishing characteristics; |
| (6) | Methods of operation, local advertising service, national advertising service, Superline reservation service, and publicity; |
| (7) | A standardized, uniform motel service identified with any of the Word Marks and with the other distinguishing features, trademarks and service marks of the System, for providing lodging, food and other accommodations and conveniences, parking for automobiles, and for providing such motel service of a distinctive nature in accordance with high standards, efficiency, courtesy and cleanliness; . . . |

Section Five of the Agreement provides that "FRANCHISOR expressly reserves the right to revise, amend, and to change from time to time its said System, or any part thereof."

Per the terms of the Agreement, franchisees were also required to abide by the Rules of Operation that were in place at the time the parties entered into the Agreement as well as any revisions to such rules as adopted by Super 8 from time to time. Specifically, the Agreement requires franchisees to:

> To comply with the rules of operation as now established by FRANCHISOR in the Super 8 Motel Rules of Operation, Quality Assurance Program, Trademark Identity Manual or similar manuals or rules of operation, copies of which have or will be furnished to FRANCHISEE, or as revised or amended by FRANCHISOR from time to time hereafter, the right of revision and amendment being reserved by FRANCHISOR. FRANCHISOR and FRANCHISEE recognize that the wisdom and practicality of all rules for the operation of the System may require amendment from time to time as a result of experience, and they therefore agree that FRANCHISOR may, from time to time, make revisions in or amendments to such rules of operation

3

which FRANCHISOR shall apply uniformly to all Super 8 Motels, including those owned and operated by FRANCHISOR, and FRANCHISEE agrees to comply with all such revisions and amendments."

The Agreement also contains a section entitled "Consideration; Royalty and Advertising fees," which provides for the payment of the following fees: (1) an initial franchise fee of $20,000, plus an additional $100 per room in excess of 120 rentable guest units; (2) an ongoing monthly "franchise fee" of 4 percent of all gross room sales; (3) an additional monthly "Advertising and Reservation Fund" fee of 2 percent of all gross room sales; and (4) an "additional franchise fee" equal to any excise, sales, or privilege tax imposed upon the defendant as a result of the franchise agreement. As provided in the Agreement, the 2 percent fee on gross rooms sales is payable to "Super 8 Advertising and Reservation Fund" and

> (b) shall be under the exclusive control of FRANCHISOR, and shall be used by FRANCHISOR solely for the publication and distribution of directories, pamphlets and other advertising matter, for radio, television, magazine, newspaper and other forms of advertising media, for technical and professional advice and service in connection therewith, for employment of personnel and office expenses and attributable to the administration of the advertising fund, for advertising agency commissions, and for any other advertising, promotional or related purposes and for advertising and promoting Super 8 Motels on a local, regional, national and/or international basis, and to fund and administer the Super 8 Motel Reservation System, however denominated, and the operation of the V.I.P. Club under the provisions and procedures set forth in the operating manual from time to time.

As part of the Agreement, all franchisees were required to participate in the V.I.P. Club customer loyalty program. The covenant in the Agreement entitled "Credit Card System" specifically provided that franchisees are required "[t]o participate in any Super 8 credit card system which may hereafter be adopted by FRANCHISOR, and to further participate in a V.I.P. Club established by FRANCHISOR and to accept any other credit cards approved by the FRANCHISOR as set forth from time to time in the rules of operation." Super 8's Policy and Rules regarding the V.I.P. Club provides that "[e]ach Super 8 Motel must participate in the V.I.P. Club." (Defs.' Ex. 1.) The policy statement further provides that "[a]t the time of enrollment at the motel front desk, the guest will receive a 10% discount on the first night's stay," "will be charged a $2.50 **one time** processing fee," and will be

4

issued a temporary card. (Defs.' Ex. 1.) The benefits of an individual V.I.P. membership include the following: (a) 10% discount at Super 8 Motels; (b) Guaranteed reservations; (c) Ability to cash one check for up to $50.00 for cash for each night stayed at the motel; (d) SuperCheck Express Check In; (e) Discount on car rental. (Defs.' Ex. 1.) The policy also states that "[t]he V.I.P. discount must be given on all rates and room types each day of the year." (Defs.' Ex. 1.)

Section 20 of the Agreement contains an integration clause which provides that:

> This Franchise Agreement contains the entire agreement of the parties, and there are no representations, warranties, covenants, inducements, promises, agreements, or undertakings, oral or written, expressed or implied between the parties hereto other than those expressly set forth herein. No agreement of any kind or modification or waiver of any of the terms, covenants, or conditions of this Agreement shall be binding upon either party unless the same has been made in writing and duly executed by both parties.

TripRewards Program

In 1993, Super 8 was acquired by HFS, which then merged with Cendant Corporation, headquartered in Parsippany, New Jersey. Cendant later split into multiple operating companies under the Wyndham name. Super 8 Motels, Inc. is now a wholly-owned subsidiary of Wyndham Hotel Group, one of the three principal components of Wyndham Worldwide Corporation, encompassing nearly 7,000 hotels representing more than 588,000 rooms in 66 countries on six continents under the Wyndham, Ramada, Days Inn, Super 8, Wingate by Wyndham, Baymont Inn & Suites, Microtel Inns and Suites, Hawthorn Suites, Howard Johnson, Travelodge, and Knights Inn brands.

In December 2003, Cendant Corporation launched the TripRewards Program for customers of all of its numerous hotel and motel franchises,[1] including Super 8. TripRewards is a points-based,

---

[1] The Wyndham brand was excepted from implementing TripRewards and was allowed to retain its loyalty program, "Wyndham ByRequest," long after the implementation of TripRewards.

multi-brand loyalty program intended to encourage customers to stay at all of the hotels and motels affiliated with the parent corporation's various franchised lodging brands. TripRewards members earn "points" for staying at all member hotels, including Super 8 franchisees. Accumulated points can then be redeemed for "Rewards," such as magazine subscriptions, theme park tickets, gift certificates, gasoline cards, or a free night's stay at any of the parent corporation's lodging franchises, including Super 8.

TripRewards is a mandatory marketing program and immediately replaced the other customer loyalty programs of its franchisees such as Super 8's V.I.P. Club. All active V.I.P. members who transacted business with Super 8 in the 18 months prior to the conversion were automatically converted into TripRewards members. (Zusman Dep. 59:12-25.) In addition, any customer thereafter reserving a room on the Internet with Super 8 or any of Wyndham's eleven lodging brands is automatically enrolled in TripRewards unless he or she affirmatively "opts out."

In addition to implementing and promoting the new TripRewards program, franchisees were required to pay a 5 percent fee on the gross room rate for their participation in the program. This new fee was used to "fund the issuance of Program rewards, advertising of the Program and the administration of the program." (Defs.' Ex. 8.)

In September 2003, Bird Hotel, through its owner Paul Kostas, wrote to Super 8 to raise several objections to TripRewards, including his contention that his Agreement did not require his participation in the new program. In particular, Mr. Kostas believed the 5 percent fee on gross room sales to TripRewards members violated the terms of the Agreement. Subsequently through his Canadian legal counsel, Mr. Kostas requested that Super 8 identify the contractual basis for the TripRewards program in his Agreement. Super 8's legal counsel responded with a letter citing the following relevant provisions of the Agreement and further explaining the program:

Super 8 Motel, Unit No. 3393 (Agreement dated February 5, 1986)

1. Sections 3(A), (J) and 5 - Requires the franchisee to comply with the rules of operations as revised from time to time by Super 8 Motels at its discretion.

2. Section 3(B)(2) - Grants Super 8 Motels broad discretion in establishing advertising, marketing promotional and similar program for the Super 8 system.

3. Section 3(H) - Requires the franchisee to participate in the Super 8 VIP program and any other credit card systems as Super 8 Motels may require from time to time.

. . . .

Under TripRewards, franchisees pay 5% of room revenues only on qualified stays by TripRewards members. In comparison, under the Super 8 VIP program, franchisees were required to offer all members a 10% discount off the standard room rate. The TripRewards fees are used to fund the issuance of Program rewards, advertising of the Program and the administration of the program . . . . The net cost of the program should be no more than the VIP program.

(Defs.' Ex. 8.)

Procedural History

Bird Hotel filed a complaint initiating this matter on February 24, 2006, in South Dakota state court. Super 8 subsequently removed the action to the United States District Court for the District of South Dakota Southern Division. In its Complaint, Plaintiff alleges that the TripRewards 5 percent charge is an additional fee, the imposition of which violates the provisions of the Agreement providing for payment of "Consideration; Royalty and Advertising fees."

On October 30, 2006, Super 8 filed a motion for Judgment on the Pleadings arguing that it was permitted under the express language of the Agreement to make changes to operations and thus to its customer loyalty program detailed therein. On September 19, 2007, the Court issued a memorandum opinion and order denying Super 8's Motion for Judgment on the Pleadings.

On October 16, 2007, the Court granted class certification pursuant to Federal Rule of Civil

7

Procedure 23(b)(3). (Doc. 51.) The Order certified a class of 226 franchisees that are or have been parties to the standard Agreement at issue in this case and were subject to Super 8's requirement instituted in December 2003 that franchisees must pay an additional 5 percent fee on all gross room sales to customers enrolled in its TripRewards program. (Doc. 51.)

On September 25, 2008, the Court entered its order approving the process for providing notice and the opportunity to opt out of the class. (Doc. 75.) Bird Hotel provided notice according to the prescribed procedure and 28 franchisees opted out of the class. (Docs. 78, 81). On July 13, 2009, the parties filed a joint motion in which they requested that ten additional franchisees should also be removed on the basis that they are owned by entities that had opted out. That same day, the parties filed a joint motion to redefine the class to exclude those who had previously executed releases of all potential claims against the defendant. (Doc. 92). On August 27, 2009, the Court entered its order granting the motions. (Doc. 97). As a result, the final composition of the class consists of 160 members.

Currently pending before the Court are motions for summary judgment filed by both parties in this case. The parties dispute whether the terms of the Agreement allow for Super 8 to charge a 5 percent fee on gross room sales to customers participating in the TripRewards Program.

LEGAL STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the Court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement

to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Once the moving party has met its burden, the non-moving party may not rest on the allegations of its pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 257; *City of Mt. Pleasant v. Associated Elec. Coop., Inc.*, 838 F.2d 268, 273-74 (8th Cir. 1988).

## DISCUSSION

The question before the Court in these summary judgment motions is whether or not Super 8 breached the terms of the Agreement when it imposed a 5 percent fee on room sales to customers registered with the TripRewards Program. The Agreement provides that the laws of South Dakota will be applied to disputes arising therefrom.

### I.

Franchise agreements are construed and enforced according to basic contract law, *see Bores v. Domino's Pizza, LLC*, 530 F.3d 671, 674-76 (8th Cir. 2008) (construing franchise agreement according to state contract law principles), and under the laws of South Dakota, "[t]he interpretation of a contract is a question of law." *Pauley v. Simonson*, 720 N.W.2d 665, 667 (S.D. 2006). When determining the meaning of a contract, "effect will be given to the plain meaning of its words." *In re Dissolution of Midnight Star Enterprises, L.P.*, 724 N.W.2d 334, 337 (S.D. 2006) (additional citations omitted). A court must look "to the language that the parties used in the contract to determine their intention." *Pauley*, 720 N.W.2d at 667-68 (citation omitted). In doing so, a court must "give effect to the language of the entire contract and particular words and phrases are not interpreted in isolation." *Midnight Star*, 724 N.W.2d at 337 (citation omitted). If the parties' intention is made clear by the language of the contract "it is the duty of this [C]ourt to declare and enforce it." *Pauley*, 720 N.W.2d at 668. "However, if the contract is uncertain or ambiguous, parol and extrinsic evidence may be used for clarification." *Id.* (internal quotations and citation omitted). "A contract is ambiguous only when it is capable of more than one meaning when viewed objectively

9

by a reasonably intelligent person who has examined the context of the entire integrated agreement." *Pauley,* 720 N.W.2d at 668 (citation omitted).

In its motion for summary judgment, Bird Hotel does not dispute that Super 8 has authority to change its customer loyalty program, but argues that it may not do so by imposing a 5 percent fee on gross room sales to TripRewards members. Bird Hotel contends that the plain language of the Agreement only authorizes the imposition of four fees during the course of the contract and that the new 5 percent fee on gross room sales to TripRewards members has been imposed upon class members in violation of the terms of the Agreement. The class seeks reimbursement of the sum of fees paid as a result of the alleged breach of the Agreements as well as prejudgment interest.

Super 8, however, argues that nowhere in the Agreement is any language stating that the fees are exclusive to those specifically delineated in section concerning "Consideration; Royalty and Advertising fees" and that Bird Hotel's narrow focus on this fee provision ignores the numerous other provisions which permit Super 8 to impose additional expenses upon franchisees and to make revisions to its franchise operations. Provisions highlighted by Super 8 that entail additional expenditures by franchisees include: (1) Section 3(W), "FRANCHISEE shall purchase and maintain at FRANCHISEE's sole expense such equipment as is from time to time designated by FRANCHISOR to connect FRANCHISEE'S motel to FRANCHISOR'S national reservation system, however denominated"; (2) Section 3(N), Franchisee "agrees to purchase from FRANCHISOR" or other approved vendors 25 individually identified items of hotel room property; (3) Section 3(K), franchisee "agrees to maintain and keep in force" numerous types of insurance for the benefit of franchisor; (4) Section 3(O), franchisee agrees to travel to and attend certain meetings. Super 8 argues further that the 10 percent discount associated with the V.I.P. Program was not delineated in the Agreement, but rather in the Rules of Operation which, under the terms of the Agreement, Super 8 may revise at its discretion. Specifically, Super 8 notes Section 3(J) which provides that:

> FRANCHISOR and FRANCHISEE recognize that the wisdom and practicality of all rules for the operation of the System may require amendment form time to time as a result of experience, and they therefore agree that FRANCHISOR may, from time to

time, make revisions in or amendments to such rules of operation which FRANCHISOR shall apply uniformly to all Super 8 Motels, including those owned and operated by FRANCHISOR, and FRANCHISEE agrees to comply with all such revisions and amendments.

Super 8 argues further that Section 3(H) of the Agreement specifically anticipates the potential for changes to the customer loyalty program as it requires franchisees:

To participate in any Super 8 credit card system which may hereafter be adopted by FRANCHISOR, and to further participate in a V.I.P. Club established by FRANCHISOR and to accept any other credit cards approved by the FRANCHISOR as set forth from time to time in the rules of operation;

In the event that the Court finds that the contract is ambiguous, both parties reference parol and extrinsic evidence to aid the Court in its interpretation of the parties' intentions.

The Court concludes in this case that it need not refer to parol and extrinsic evidence because the Court finds in examining the entire context of the Agreement, that its terms clearly do not permit Super 8 to impose upon its franchisees an additional 5 percent fee on gross room sales to TripRewards members for their participation in the customer loyalty program. The Agreement provides that franchisees will be charged a 2 percent, not a 7 percent fee[2] for a franchisee's participation in the customer loyalty program. Section 3(B)(2) of the Agreement specifically states that "[a] sum equal to two percent (2%) of gross room sales" . . . "shall be by check payable to 'Super 8 Advertising and Reservation Fund' and . . . shall be used by FRANCHISOR solely for" the advertising and promotion of Super 8 Motels, the administration of the Super 8 Motel Reservation System, and "the operation of the V.I.P. Club under the provisions and procedures set forth in the operating manual from time to time." Even if Super 8 has retained the right in the Agreement to change its system standards and rules of operation and its customer loyalty program detailed therein, it may not unilaterally impose a fee for the operation of that program greater than what is provided for in the language of the

---

[2]Franchisees were charged this new 5 percent of gross room sales fee in addition to the 2 percent of gross room sales fee which it had been paying pursuant to the original terms of the Agreement.

11

Agreement. Under the terms of the Agreement, franchisees were required to pay Super 8 a fee equal to 2 percent of gross room sales for their participation in the customer loyalty program and to give customers who participated in the program an additional 10 percent discount off the room rate. Under the TripRewards Program, the benefit to customers participating in the loyalty program is not a 10 percent discount on room rates, but rather an opportunity to redeem points earned for staying at hotels and motels participating in the program for certain rewards such as magazine subscriptions, theme park tickets, gift certificates, gasoline cards, or a free night's stay. It does not appear that Bird Hotel takes issue with Super 8 revising in this manner the benefits customers receive by participating in the customer loyalty program, but contends that Super 8 may not increase the fee that franchisees must pay Super 8 for its participation in the program over that which is explicitly provided for in the contract. The Court agrees with Bird Hotel and finds that doing so amounts to a unilateral revision of the terms of the contract and not, as argued by Super 8, to a revision of the system standards and rules of operation.[3] The Court therefore finds inapposite the cases cited by Super 8 in which courts have upheld a franchisor's contractual right to implement systems or operations changes.

In sum, the Court concludes that Super 8 breached the Agreement when it required franchisees to pay a total fee equal to 7 percent of gross room sales for their participation in the TripRewards program. The Agreement provided that franchisees would only be charged 2 percent of gross room sales for their participation in the customer loyalty program and nowhere in the Agreement did Super 8 reserve the right to unilaterally revise these terms.[4]

---

[3] Whether there are any limits on Super 8's discretion to revise the system standards and rules of operation and the extent of those limits is not a question that is presently before the Court and will not be addressed in this opinion.

[4] Even though the Court concludes that the terms of the Agreement are clear and unambiguous, the Court notes that the parol and extrinsic evidence provided by Plaintiff Bird Hotel would further persuade the Court that the contested fee was imposed upon franchisees in breach of the Agreement. Franchisors are required under federal law to disclose to prospective franchisees in detail all the fees that a franchisee must pay to the franchisor and its affiliates as well as the formula used to compute the fees. The regulations specifically provide that "[i]f fees may increase, disclose the formula that determines the increase or the maximum amount of the increase. For example, a percentage of gross sales is acceptable if the franchisor defines the term

II.

"In an action for breach of contract, the plaintiff is entitled to recover all his detriment proximately caused by the breach, not exceeding the amount he would have gained by full performance." *Bad Wound v. Lakota,* 603 N.W.2d 723 (S.D. 1999) (citation omitted). To recover damages for breach of contract, the loss must be clearly ascertainable in both its nature and origin. SDCL 21-2-1. Damages also must be reasonably certain. *McKie v. Huntley,* 620 N.W.2d 599, 603 (S.D. 2000). "Reasonable certainty requires proof of a rational basis for measuring loss, without allowing a jury to speculate." *Id.* at 604 (citation omitted). "Whether the fact of a loss has been proven to a reasonable certainty is ordinarily a question for the trier of fact." *Keegan v. First Bank of Sioux Falls,* 470 N.W.2d 621, 624 (S.D. 1991).

Bird Hotel argues that "[i]f the class members prevail on their breach of contract claim, the damages are simply the mandatory TripRewards fees that each class member has been required to remit to the defendant since the program was launched in December of 2003." (Pls.' Br. in Supp. of Mot. for Summ. J. at 27.) Bird Hotel states that through the end of June 2009, the TripRewards fees paid by the class members amounted to $3,418,112.34 and requests summary judgment in that amount plus any additional TripRewards fees paid by the class members between June 2009 and the date that the judgment is entered, as well as pre-judgment interest on the entire amount.

The Court concludes that the sum of unauthorized fees paid by class members since the launch

---

'gross sales.'" In accordance with these regulations, Super 8 represented to class members and to the Federal Trade Commission that "Recurring fees are limited to a royalty of 4% of gross room revenue, payable to Super 8 Motels, Inc. and 2% of the gross room revenue payable to the Super 8 Advertising and Reservation Fund. There are no other royalties or fees." It is the Court's view that Super 8's disclosure pursuant to these regulations indicates that the parties did not anticipate that Super 8 would be permitted under the terms of the Agreement to impose an additional recurring fee equal to 5 percent of gross room sales to TripRewards members. The drafter for Super 8 of the Agreement has now stated that he intended that Super 8 would be able to impose this fee. Nothing in this footnote is relied upon by the Court in reaching its conclusion in this case.

of the TripRewards Program constitutes a reasonable basis for calculating damages proximately caused by Super 8's breach. However, the Court finds that questions of material fact exist as to whether this sum exceeds the amount class members would have gained had Super 8 fully performed the contract. Super 8 argues that awarding class members the full amount of fees paid in breach of the Agreement, $3,418,112.34 through the end of June 2009, will result in a windfall to class members. Specifically, Super 8 states that this damages figure does not account for the amount class members allegedly saved as a result of not being required to give customers participating in the old customer loyalty program, the V.I.P. Program, a 10 percent discount on room rates and ignores the income received from room sales to customers seeking to take advantage of the benefits provided by the TripRewards Program. In fact, Super 8 argues that class members have suffered no damages at all as a result of these offsets. The Court finds that the question of whether any benefits accrued to class members as a result of Super 8's breach of the Agreement and the monetary value of those alleged benefits are questions to be determined by a jury. *See First American Bank & Trust, N.A. v. Farmers State Bank of Canton*, 756 N.W.2d 19, 33 (S.D. 2008) ("Proximate cause is a question for the jury except in the rarest of cases."); *Roth v. Farner-Bocken Co.*, 667 N.W.2d 651, 662 (S.D. 2003) (stating that the amount of damages to be awarded is jury question). The parties will be able to present their respective non-speculative damages positions to the jury.

For the foregoing reasons, it is hereby ORDERED that:

1. Bird Hotel's Motion for Summary Judgment (Doc. 99) is GRANTED IN PART AND DENIED IN PART and Super 8's Motion for Summary Judgment (Doc. 107) is DENIED.

2. The scope of the jury trial will be limited to the amount of damages, if any, to be awarded class members.

3. All motions in limine, with supporting authority, shall be in writing and filed, together with proposed instructions, with supporting authority, with the Court ten (10) working days before trial.

4. That the trial previously scheduled to commence on April 13, 2010, is continued to Tuesday, June 1, 2010, with counsel to be present for motions in limine at 9:00 A.M., and with the jury to report at 9:30 A.M.

Dated this 16th day of February, 2010.

BY THE COURT:

*Lawrence Piersol* (signature)
Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK

BY: *(signature)*
DEPUTY